Good morning, Your Honors. My name is Eddie J. Kim from the law firm of Lynch Carpenter and I represent this, let me just say at the outset, this is a little bit confusing, but this case originated as Schertzer v. Bank of America. There were multiple plaintiffs, there were multiple defendants. We're here to represent the only plaintiff, Brittany Covell, regarding her claims only against Bank of America and not the other ATM defendants that were once a part of this case. Counsel, are you going to reserve any of your time? If I may, I'd like to reserve three minutes for rebuttal. Very well, and keep track of that time for you. This consumer class action seeks to stop one of the most abusive systematic practices related to excessive fees being assessed for use of auto network ATM machines. What happened to Plaintiff Covell is an example that's both typical and shocking. Ms. Covell was a Bank of America customer at the time when she walked into a 7-Eleven, went to an ATM machine to withdraw $20. Those ATM machines are all operated by an independent ATM operator called SCTI, Inc., which was once a defendant in this case. When you insert your debit card into the machine and then you enter your PIN and ask what language that you'd like to proceed, and after all of that, the first thing that it prompts you is would you like to view your account balance. As many other ATM machines that people have in the main menu and you get to choose what you want to do, in this ATM interface, which is uniform for all of the SCTI machines at 7-Eleven, the first prompt is would you like to check your account balance. And you're given two button options on the screen, yes or no. And you agree that that's a balancing error? And we agree that's a, well, not yet. Plaintiff Covell pressed the yes button, and then the second screen is the account selection screen, where you get to choose checking or savings. And at that point, when she selected checking, a balance inquiry occurred. We understand that. We recognize that's a valid one. The transmission is made by the ATM machine to Ms. Covell's home bank, Bank of America, of electronic transmission for a balance inquiry request. B of A then sends back her available balance information for her checking account, and at the same time, assesses her fee of $2.50 for a balance inquiry. And so, when that information is sent back to the machine, it is now on the next screen, her checking account available balance is shown on the screen. And this is, this screen is the crux of this lawsuit. Because right under where her balance information that she just inquired and paid for is displayed, it asks the compound question, would you like to print your account balance and continue the transaction? And you're only given two button options. One is cancel, and if you press cancel, the entire session ends, and you can't get to the intended cash withdrawal or anything else. If you press continue, that's the only option to proceed with your intended cash withdrawal. And so, that's what Brittany Covell did. She pressed yes, continue, up, yes, continue. And the crux of this case is whether this screen, which we've referenced in our brief as the receipt screen, constitutes a balance inquiry prompt or not. And I'll get more into the reasons for that later. But she then proceeds to make her cash withdrawal. And so, excuse me, what happens once you press the continue button is, even though all she's doing is printing the information that she already paid for, and she already has inquired, and it's just printing that information on a receipt, and continue to the rest of her transactions. The machine sent Bank of America another balance inquiry request transmission. So, I'm wondering, in the deposit agreement, and that's what's given to the consumer, in the deposit agreement, does it spell out what balance inquiry is? And does it lay out this particular situation where the ATM itself is sending balance inquiries to the bank? So, we believe that the contract expressly sets forth everything we need to know to understand for a consumer to understand what they should be expecting. So, it specifically says the word balance inquiry, and it specifically says they will operate, the bank will operate based on instructions you give at the ATM. It doesn't say we operate based on instructions, whatever instructions the ATM machine gives us. It's what you instructed to us through the ATM. And even the term balance inquiry, an inquiry dictionary definition is to request information. Okay, but my question is, and maybe you can answer that part, is balance inquiry defined in the deposit agreement? Not anything more additional than the terms that we've identified. And who wrote the deposit agreement? Bank of America. It's the deposit agreement and the schedule of fees. These are adhesive contracts drafted by Bank of America that every customer must agree to in order to be a customer at. And where do you think the district court went wrong in saying what Bank of America did was okay? So, I think there's a couple of things here. And I think one thing, you know, I mentioned earlier at the outset that this case was involved with multiple defendants. And I think the district court got caught up, one of the things that got caught up was a lot of the language and arguments we used, primarily with respect to a different ATM defendant's ATM, which is the largest independent ATM operator in the country. We had used certain language that, about whether a customer is intended to do these balance inquiries. But I think the thing that we wanted to make clear in this appeal is that from the very outset of the case, from the Third Amendment complaint, that is the operative complaint, through all the briefs that we have filed and the underlying motions, we have made clear that our theory as to our claims against B of A, these contract claims, with respect to their customer's use of SCTI screens, had nothing to do with subjective intent. Because our argument is, you can't double charge out-of-network fees for balance inquiries when only one balance inquiry happened. And I think one of the things that the trial court got hung up on was the language about potentially, you know, knowledge or people's intents, which was really an argument that we had made with regards to the Katronis case, which is no longer part of this case. I think that was one aspect of it. But I think another aspect of it is that I think the trial court is letting B of A off the hook because B of A itself was not the originator of this deceptive or this bait-and-switch prompt. And that is to say, B of A did not design FCTI's interface. B of A did not have FCTI's interface transmit these things through non-balance inquiry prompts. And so I think the district court felt that, felt bad about trying to impute the conduct of a third party to B of A. But I think where that's an error is that these claims are under breach of contract. Unlike common law fraud, which has never been acknowledged and intent by B of A, is not an element of anything we have to prove here. They could be completely innocent in all of this, but if their contract says, we only assess out-of-network fees for balance inquiries that you instructed at the machine, then they go ahead and assess out-of-network fees for balance inquiries through prompts that aren't even balance inquiries. Let me ask you this. Let's say that if we were to agree on your breach of contract claim and we were to remand, what impact does that have on your breach of implied covenant claim? Because aren't they really duplicative? We view those as being separate. I think the California law is pretty clear that when a the covenant of good faith and fair dating applies to the application of that discretion. And in here, B of A makes clear in at least two instances that we may charge you the fee. It doesn't say that we will always charge you the fee. We exercise discretion, and in fact, they actually don't charge the fee at all to its wealthiest customers who have such high balances that they automatically waive all those fees. And so when you have a situation where they've contractually expressly inserted discretion for themselves, they have to apply it with good faith. And then that would get to kind of the other things we're talking about. We go to the fact that whether they intended or were motivated at all in trying to make extra money from this scheme that SCGI was doing, what we know is that they took 90% of the profits from those fees. Only, you know, less than 25 cents ultimately went to the ATM operator. So they're the ones that collected all the fees. They're the ones that made the promise that we're going to assess the fees. But if we decide that it was a breach of contract by BOA to charge more than the $1,250 for the balance inquiry, then your implied covenant claim is duplicative, isn't it? Because then it wouldn't be any discretion if we held that they can only charge the fee when a customer explicitly requests a balance inquiry. Admittedly, the breach of contract is not our primary claim. A breach of good faith is not our primary claim. The contract claim is the primary claim, and I don't mind focusing most of our efforts today. So I share the concern Judge Gilbin raised. If you prevail on your breach of contract claim, don't we just dismiss the claim for the implied covenant? We would certainly accept that as a result. Did you have any other questions or comments? I don't. Do you have any final, any other point, or do you want to reserve the rest of your time? I see I've got four minutes. I'm just going to make a couple sort of broad picture points. There was the thing that we're battling here is that we have a mountain of evidence from, you know, we've talked about BFA's ATM manager. We've talked about, you know, in our additional evidence that we're able to procure about the ATM networks, other ATM, other banks that have all believed, asserted that this is not a balancing group. These fees are assessed in error. There's a, the case that we were able to derive all this additional information is the POVE versus FCTI case. I guess I don't understand what you just said. It was assessed in error. BFA doesn't know this is happening. I mean, what do you mean? That, oh, my point is that nobody thinks, nobody in the ministry thinks that this is a valid balancing group, and that's the additional information we got. But my last point I want to make is that what we're battling here is just pure speculation on the part of BFA. There's been no evidence that any single individual has testified that they thought this was a valid balancing group. So I'll just leave it at that. All right. Thank you. Good morning, counsel. Good morning. May it please the Court. Shawn Obey with Winston and Strong for Bank of America. Contrary to what plaintiff has just argued, she is actually trying to shoehorn a consumer fraud claim into this case. In order to make Bank of America liable for ATM screens, it does not control or design or have any visibility into. And by making Bank of America contractually liable for anything that happens at those screens, she is effectively charging it with policing all of these hundreds of thousands of independent ATM operators. Hold on, hold on. Who contracted with those ATMs? Did the consumers contract with them? No. Who contracted with them? It is the sponsoring banks through the ATM network. Okay. Bank of America in this case, correct? Yes. The deposit agreement in place is with Bank of America. Okay. And so with regards to these ATM notices that are sent out, these balance inquiry notices, I'm assuming that that's your point, that those are controlled by the consumer or by the ATM. Is that what you're saying? Your Honor, the balance inquiries come through the ATM network through an electronic message. And that is the case regardless of what is being shown on the ATM screen. Okay. Well, I guess answer his question or answer his point. His point is, hey, I've paid for, let's assume that we agree that as soon as I select, oh, I want to know what my balance is for my checking account. So at that point, the deposit agreement says, yes, you're going to get charged because of this balance inquiry 250. Okay. But then when you get to the other screen and it shows that do you want this printed and continued, at that point, what is your response or why is it that they should be, the consumer should be charged an additional $2.50, and why shouldn't Bank of America be liable for that? Well, Your Honor, it's because Bank of America, this is a breach of contract case. This is not a consumer deception case. And there are remedies for the consumer in place as plaintiff well knows. I'm sorry you're not answering my question. Go back to my question. My question is, or let me ask a different question. Maybe I wasn't clear. In the deposit agreement, where does it spell out that the consumer has to pay this additional fee? Okay. Can you tell me that? Yes, Your Honor. It says that when you use a non-Bank of America ATM, you may be charged a fee for a balance inquiry, and that that is $2.50 each. The contract also provides that you authorize us to act on the instructions you give us through the ATMs. And I think that's really important, Your Honor, the through ATMs. There is no other way for this to work, for customers to transact out of network without Bank of America relying on the electronic messages. There is a way that Bank of America, you can contract that out with a subcontractor, in this case the ATM companies who are providing the service. You can tell them, hey, we're talking about one balance inquiry when they're asking for their balance, can't you? No, Your Honor. It's undisputed that Bank of America has no relationship to FCTI. That is not the way the ATM ecosystem works. And essentially what Plymouth is trying to do is to charge through the contract Bank of America with this duty to oversee essentially all of the screens that's in place on these out-of-network ATMs. There is simply no ability for it to do that. And the interpretation that she urges on this court results in a contract that Bank of America did not and could not have made. She made the point earlier that intent does not matter because this is a breach of contract, but it does. Contract formation matters. The intent of the parties matter. And there's simply no way that Bank of America would have agreed to police all of these screens. That's not the way it works. All right. So let's assume that the agreement between the ATM out-of-network people and the bank were such that every time you press any button, you know, first of all, just checking your savings. All right, I want to check it. All right, how much do you want out of checking? All right, do you want me to print a final receipt? Say it generated three or four what was considered balance inquiries. In other words, three or four $2.50 fees. Is that okay, even though the customer only thought he was making one balance inquiry? What it is not is a breach of contract claim against her issuing bank. What it is, if there's problems with the screens, that needs to be taken up with the designers of those deceptive screens and those who have insight and control over them, perhaps the sponsoring bank as well. I'm sure the IT departments of the Bank of America could have instructed to be sure that when it gets any inquiry beyond the first one, from a customer at an out-of-network ATM, to not charge $2.50. When the customer goes into 7-Eleven and into an out-of-network, it's the first time that you want to balance, you know, your balance. Yeah, I'm sorry, $2.50. And don't have any further charge on that inquiry. Your Honor, regardless of what is shown on the screen, and plaintiff admits she doesn't challenge the first one. It's only the second one. Both times it comes through as an electronic message to Bank of America. There's no information about the screen environment. It's a very standardized message. And Bank of America, under the network rules, is required to respond with the information. Not required to charge $2.50, though, counsel. Well, Your Honor, the bank's ability to assess the fees in connection with ATMs is protected under the law, the National Banking Act. Right, but you control your definition in the agreement. And you call it a balance inquiry. You don't define it, do you? You don't say this could include, you know, many charges for the same balance, for example. Well, Your Honor, no, it doesn't. But it doesn't need to. Because the language is clear of what customers can expect. And that is when you read the contract together, when you use an out-of-network ATM, you may be charged the $2.50 each. And you authorize us to act on the instructions you give us through the ATMs. Is it actually true that if for high net worth or high credit balance or account balance customers, the bank doesn't charge any fees at all for inquiries? For certain products, that is true. But not for the account end issue here. Right, but it shows that the bank can program its internal things to not generate a $2.50 fee for balance inquiries if it wants for certain accounts. Respectfully, Your Honor, I don't believe that that is in the record. The Bank of America's ability to issue refunds after the fact does not constitute a breach at the time of formation of the contract. And your point, and your position is that we're entitled to charge that amount, regardless if it was a mistake of the ATM. Under a breach of contract claim, yes, Your Honor. If she is faced with a tricky out-of-network screen or something that plaintiff says is not an objective balance inquiry, customers are not left without a remedy. They can, as Plaintiff's Counsel has already done, bring consumer protection claims against the ATM operators for deception, which is what they've done. But that is not this case. And whatever claims she has about these screens should not be adjudicated through a breach of contract claim with her issuing bank. And that is provided by the terms of the contract itself, but it's only bolstered by the extrinsic evidence in this case. And that is that requests for balance information comes through via the network with standardized messages that say nothing about the screen environment. And so Bank of America cannot make a determination about what is on the screen. Bank of America is not allowed under the network rules to reject a request for a balance inquiry unless there are certain circumstances that are present here. And it's undisputed that Bank of America has no relationship with FCTI, has no oversight or insight into its screens. These are not Bank of America ATMs. And Bank of America is not the sponsoring bank who is charged under the network rules with insuring out-of-network ATM operators like FCTI complies with them. So, in that way. Go ahead. Go ahead, Counsel. Can I ask you a question, Counsel? Yes. Earlier you were talking about the intent of the parties. And so, what evidence is there of intent of the plaintiff here to be charged more than one ATM fee for a balance inquiry? Well, Your Honor, the plaintiff should, as her appointment requires, she should report instances of fraud or activity that she disputes. And she did not do that. There are remedies in place if the plaintiff did not expect to be charged that fee. But it can't be based on her definition of what a balance inquiry is. Because that. And why is that in the contract itself? Is there a definition of balance inquiry that says it can't include an inquiry made by the ATM without a human decision? That is not in there. But the language that the bank is authorized to rely on the instructions provided through the ATM is the link, Your Honor. Instructions. Does it say instructions of the ATM as opposed to instructions of the bank's customer? It says you authorize us to act on the instructions you give us through the ATMs. And I think the critical part there, Your Honor, is the through the ATMs. The only way for this to work for a customer that goes out of network and wants to use an out-of-network ATM, it has to go through the ATM network. And, again, the standardized messages say nothing about the screen. Whether it was tricky, whether it was or was not a balance inquiry, as the plaintiff now says, it only comes in as an electronic message. But this goes to Judge Gilman's question earlier that, you know, an ATM could have all sorts of numbers or buttons that you could press. Bank of America is still, and then those send balance inquiries to Bank of America. Bank of America is still charging the 250. Right, Your Honor, because in that situation, again, it is the difference between plaintiff's definition or desired definition of balance inquiry, which is everything that happens on the screen. That information is not knowable. It cannot be knowable the way it works. Well, there's smart people in IT that can figure those things out, don't you think, Counsel? No, Your Honor, it's not. We have extensive extrinsic evidence about the ATM network and how the messages go through and what the standardized message contains. And it's nothing about the screen environment. It is on your end. There's nothing in the contract, Your Honor, that would insert that contractual term into the agreement. Okay. Well, let's assume it's ambiguous what a balance inquiry is. Wouldn't you still lose because the language would be construed against the bank as the drafter of the document? No, Your Honor, because the extrinsic evidence in this case only supports Bank of America's position here. What does that mean? Well, it shows that plaintiff's desired degree to the contract requires Bank of America to know the unknowable, which is the screen environment that she saw. And the extrinsic evidence is the network rules, excuse me, the way the sponsoring banks are charged with, and to be clear, Bank of America is not a sponsoring bank. The sponsoring bank here was Prosperity Bank. They are charged with overseeing the independent ATM operators. That's the way ATM operators can participate in the network. It is not Bank of America's role or any other issuing bank's role to monitor the activity of the out-of-network ATM. And, Your Honor, a contract is capable, to answer your question, of two constructions. Courts are bound to give an interpretation that will make it lawful, operative, definite, reasonable, and capable of being carried into effect. And plaintiff's definition of balance inquiry, which is what happens on these screens that Bank of America doesn't see or control, it's not reasonable or capable of being carried into effect. And instead, balance inquiry can only be defined as the electronic message that traveled through the ATM network that was triggered from her selections at the FCTI machine that she authorized Bank of America to act on. Counselor, I see your time is up. Do you want to make a final point? Again, I just want to say that to the extent that there are concerns that the customer is left without a remedy, again, I will just reiterate that that is not the case. For all service-leading screens, everything is working as it should against FCTI, the maker of these screens. The consumer is not remedy-less. But what plaintiff does not have here is a breach of contract claim against the issuing bank. Thank you. Thank you. Your Honors, unless you have any specific questions, I would just like to make a final statement. Okay. One point I'd like to make is that there was a – what the point I was trying to make before I sat down is that in the other case, the POVE versus FTI case, that court issued an opinion on Classert. It came out after BFA's responsive brief. It came out a couple weeks before our reply brief. I believe we failed to cite it and out of respect for the defendant, I won't argue right now, but we did notify them of the order as soon as it had come out. I just want to give the case site in case the court is interested. It's POVE versus FCTI, 2024, Westlaw, 322050. That's Southern District of New York with Judge Rakoff and he's counseled by the district court. Because the district court didn't address class certification, if we were to rule for you on the breach of contract claim, wouldn't we necessarily want to remand to the district court to address your class claim? Your Honor, the district court denied our motion for class certification, and that's one of the parts of the opinion that's subject to this appeal, and we've pointed out numerous errors in a piece of discretion, and we believe that, again, we're not fighting against anything. Nobody has presented any evidence that anyone thinks that this was a valid balance inquiry. You didn't directly answer Judge Gould's question. You would want us to remand the class. We would want to remand, but I would go a step further and request this court to just reverse the trial court's decision on class merit and grant it. But at the very least, of course, we would. Again, but when? When the court denied certification, and it also denied the basic claim. Yes. So how could it certify class if the claim of the named plaintiff was inbound? Right. So I understand your point, Your Honor, and I think the district court didn't need to weigh on class merit once it decided that the individual class reps or potential class reps' claim was dismissed, but because the district court anyway issued an opinion on it, that's why we felt that we had to address that in this appeal as well. Thank you, counsel. And then just one last point. I'll sit. All right. Just one second. Judge Gould, do you have any other questions? No, thanks, Judge Mendoza. Very well. All right. Thank you, counsel. Thank you to both of you. This matter will stand submitted.
judges: Gilman, GOULD, MENDOZA